# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:23-CV-00106-KDB

| | |
|---|---|
| **JENNIFER WILLIAMS SURRETT,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MARTIN O'MALLEY,**<br>**Commissioner of Social Security,**<br><br>**Defendant.** | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Jennifer W. Surrett's Complaint (Doc. No. 1), Plaintiff's Opening Brief (Doc. No. 6), Defendant Commissioner's Brief (Doc. No. 9), and Plaintiff's Reply Brief (Doc. No. 10). Surrett seeks judicial review of an unfavorable administrative decision denying her application for disability benefits under the Social Security Act. The Court has carefully considered the motion, the parties' briefs, the administrative record, and the applicable legal authority. For the reasons discussed below, the Court will **DENY** Plaintiff's judicial appeal of the Commissioner's decision and **AFFIRM** the Commissioner's decision.

## I. LEGAL STANDARD

The legal standard for the Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and

1

number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151-52, 203 L.Ed.2d 504 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[1] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Accordingly, the Court does not review a final decision of the Commissioner *de novo, see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence," *Shinaberry*, 952 F.3d at 120 (internal citations omitted); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

---

[1] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not. *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction 'is so narrow that it is often very difficult for a court to decide upon which side of the line' evidence falls). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that 'scintilla is Latin for "whatever a judge wants it to mean."' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

Thus, the Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id*. (internal quotation marks omitted); *Shinaberry*, 952 F.3d at 123. That is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding the limited standard of review of the Commissioner's factual determinations, in all cases the Court must always ensure that proper legal standards are being followed.

## II. FACTS AND PROCEDURAL HERTORY

On February 11, 2020, Surrett filed an application for a period of disability and disability insurance benefits, alleging that she had been disabled since February 3, 2019. AR 15. Her application was denied on its first review and then again upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Plaintiff's application in a decision dated June 7, 2022. AR 15-47. The Appeals Council denied Surrett's request for review and thus the ALJ's decision is the final decision of the Commissioner. AR 1. Plaintiff timely sought judicial review of that decision under 42 U.S.C. § 405(g) (Doc. No. 1).

3

1. **The Commissioner's Decision**

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration ("SSA") to determine whether Surrett was disabled under the law during the relevant period.[2] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 3, 2019. AR 18.

At step two, the ALJ determined that Surrett had medically determinable impairments that significantly limit her ability to perform basic work activities. These impairments included "fibromyalgia, arthropathy, diabetes, neuropathy, asthma, ovarian cysts, obesity, depression, anxiety and obsessive-compulsive disorders, and posttraumatic stress disorder (20 CFR 404.1520(c))." *Id.*

At step three, however, the ALJ decided that Surrett's impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). AR 19. The ALJ specifically found that the evidence regarding Surrett's fibromyalgia, obesity, and diabetes did not rise to the level of severity for any listed impairment, individually or in combination. *Id.* Further, the ALJ noted that her mental impairments, "considered singly and in combination," also failed to meet the criteria of any listings. AR 20. In reaching this conclusion regarding her mental impairments, the ALJ pointed to

---

[2] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but at step five the Commissioner must prove the claimant can perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

Surrett's testimony that she completes daily tasks such as preparing meals, shopping (in stores and online), driving, paying bills, caring for her pets, sewing, and other evidence regarding her ability to get along well with others. AR 20-21.

Before proceeding to step four, the ALJ found that Surrett had the following residual function capacity ("RFC"):

> can climb ramps or stairs occasionally; but never climb ladders, ropes, or scaffolds; can balance, stoop, kneel, crouch and crawl occasionally; should avoid all exposure to unprotected heights, moving mechanical parts, or other workplace hazards; can handle and finger frequently with the bilateral upper extremities; no more than occasional exposure to fumes, odors, dusts, gases, industrial chemicals, or poorly ventilated areas; can perform simple tasks with customary breaks and few changes in a routine work setting; and can have occasional interaction with the general public, coworkers, and supervisors.

AR 21-22. The ALJ then reviewed Surrett's medical history and found that her determinable impairments could reasonably be expected to cause the alleged symptoms, but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 24. Next, the ALJ reviewed Surrett's daily activities and other factors concerning Surrett's functional limitations and restrictions due to pain or other symptoms. AR 24-25. Finally, the ALJ reviewed in detail prior medical opinions and administrative medical findings, reviewing each finding before explaining how much weight the ALJ gave to each report and the reasoning for assigning such weight. AR 25-44. The ALJ concluded that Surrett's symptoms were limiting, but not fully disabling as reflected in the RFC. AR 44-45.

At step four, the ALJ found that Surrett was unable to perform her past relevant work as a dispatcher. AR 45.

Nevertheless, at step five the ALJ found that there were other jobs existing in significant numbers in the national economy that Surrett could perform based on her age, education, work

experience, and RFC. *Id.* These jobs include garment sorter, price marker, and packager. AR 46. The ALJ therefore found that Surrett was not disabled under the Social Security Act from February 3, 2019, through the date of the decision. AR 46.

## III. DISCUSSION

Surrett argues that the ALJ made three errors. First, she argues that the ALJ failed to account for Surrett's moderate limitations in concentration, persistence, or maintaining pace in the RFC. Second, she asserts that the ALJ failed to properly evaluate her fibromyalgia by not determining the functional limitations it causes and allegedly relying on an absence of objective medical findings to discount it. Third, she contends the ALJ failed to provide legally sufficient reasons for discounting the opinion of her primary care physician.

### 1. **Surrett's Moderate Limitations in Concentration, Persistence or Maintaining Pace**

Surrett contends that the ALJ did not account for the above limitations or explain why he omitted these limitations from the RFC. The Commissioner responds that not only did the ALJ appropriately analyze Plaintiff's difficulties, but he also sufficiently reviewed the entire record such that the Court can conduct a meaningful review of the ALJ's decision.

The Court will remand a case when the ALJ "ignore[ed] (without explanation) [the claimant's] moderate limitation in her ability to maintain her concentration, persistence, or pace" when conducting a function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 633 (4th Cir. 2015). However, as explained by the Fourth Circuit in *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020), this is not "a categorical rule that always requires an ALJ to include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Instead, the ALJ can explain why these limitations do "not translate into a limitation" in the RFC. *Id.* Therefore,

the Court will uphold the Commissioner's decision where the ALJ sufficiently explained the relevant findings, the mental limitations (if any) included in the RFC, and supported the decision by substantial evidence. *Id.* at 122.

In discussing Surrett's limitations, the ALJ found that nothing in the evidence "reflect[s] an intensity or frequency of symptom exacerbation as would suggest an inability to sustain regular and continuous work…. the objective medical evidence documented in the record, as discussed throughout this decision, also does not support a finding that she is precluded from sustaining regular and continuous work within the parameters reflected herein." AR 44. To reach this conclusion, the ALJ reviewed Surrett's daily activities ("ADLs"), noting that she is "able to drive, prepare meals, watch tv, and use the internet. Additionally, Surrett reported she could independently manage personal finances without significant difficulty including pay bills, count change, handle a savings account, and use a checkbook/money orders." AR 20. The ALJ cited to more than a dozen exhibits and the hearing transcript. *Id.* The ALJ also considered Surrett's education; her statement that she loved her prior job, in which she had been gainfully employed for several years after her last application for disability benefits, because it "caused her to focus, to be able to multi-task, and to be able to remember things"; her statements in the Adult Function Report that she needed help or reminders to take medicine and would write things down; evidence that she enjoyed time on her boat and had recently helped her mother after she had back surgery; and her ability to undertake daily tasks, including sewing, listening to audiobooks, and watching TV. AR 20, 22, 24-25, 43.

The ALJ also reviewed medical records, including those which described Surrett as having difficulty concentrating and further reviewed the findings of consultative examiners and agency consultants, none of whom recommended additional-work related limitations beyond simple,

routine, repetitive tasks in low-stress settings with minimal social interaction. AR 32, 44. Ultimately, the RFC accounted for all this evidence by limiting Surrett to "perform simple tasks with customary breaks and few changes in a routine work setting; and can have occasional interaction with the general public, coworkers, and supervisors." AR 21-22. Thus, the ALJ sufficiently explained his reasoning, supported by substantial evidence, as to the mental limitations in the RFC.[3]

### 2. **Surrett's Fibromyalgia**

Surrett next asserts that the ALJ failed to properly evaluate her fibromyalgia and its impact on her ability to function and the RFC. The Commissioner argues that the ALJ sufficiently considered Surrett's subjective complaints related to her fibromyalgia and explained the inconsistency between the evidence, the record, and her testimony.

Fibromyalgia is "unique" because "normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia." *Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83, 97 (4th Cir. 2020) (explaining that "normal" clinical findings are not inconsistent with the disabling effects of fibromyalgia so their presence does not indicate the level of the claimant's disability); *but see Shelby D. v. Kijakazi*, No. 3:22-cv-234, 2023 WL 6444895, at *11 (S.D.W. Va. Sept. 29, 2023) ("However, a diagnosis of fibromyalgia or depression does not render a claimant per se disabled."); *Lasharne W. v.*

---

[3] The Plaintiff argues the that "[t]he ALJ should have established for how long, and under what conditions, Surrett can focus her attention on work activities and stay on tasks at a sustained rate." Doc. No. 6 at 11. Given that the ALJ spent approximately 24 pages reviewing Surrett's testimony and the medical evidence to formulate the RFC, it can hardly be said that the ALJ failed to explain himself. Further, the Court finds that the ALJ did exactly what the Surrett seeks by limiting her to customary breaks, occasional interactions, and few changes in a routine work setting. (AR 21-22). This directly addresses the ALJ's overall finding that Surrett can focus on work activities and stay on tasks.

*Commissioner, Social Security Administration*, No. 21-cv-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023) ("[W]hile 'a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence…'" (internal citation omitted)). Further, it is "the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." *Arakas*, 983 F.3d at 98. Thus, "ALJs may not rely on objective *medical* evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." *Id.* at 97 (emphasis added).

However, here the Court finds that the ALJ did not improperly rely on objective medical evidence to discount Surrett's fibromyalgia pain and limitations. In fact, the ALJ clearly credited Surrett's subjective complaints, and favorable objective medical evidence regarding trigger points, ultimately listing her fibromyalgia as a severe impairment that significantly limited Surrett's ability to perform basic work activities. AR 18-19. The ALJ reviewed Surrett's complaints in detail, noting that Surrett "feels bruised," "cannot hold onto things," "cannot lift her arm(s) overhead," "needs to lay down or elevate her legs a couple times a day, and sometimes stays in bed all day," struggles to concentrate and sleep, and more. AR 24. Still, the ALJ concluded based on other factors, including her daily activities, that she had the RFC described in the ALJ's decision.

Surrett correctly contends that the ALJ may not support his decision based on minimal daily activities because they do not, without more, prove a claimant's ability to engage in full-time work. *See* Doc. No. 6 at 21; *see also Arakas*, 983 F.3d at 101. However, the ALJ did not support his decision with only minimal daily activities. As discussed above, Surrett acknowledged being

9

able to care for her pets, prepare her own easy meals, complete household chores, drive a car, and independently manage personal finances "without significant difficulty." AR 25. She also sews 30 minutes a day, even though her other medical conditions cause numbness in her fingers. AR 23. Surrett also reported enjoys being on her boat, going to the lake, and helped her mother after back surgery. AR 43. The ALJ appears to have placed extra emphasis on these last three activities. *Id.* ("It also bears reiterating the claimant reported helping her mother after back surgery, and also indicated she enjoyed being on her boat and going to the lake as well."). These activities, particularly her ability to care for another individual following surgery (which occurred two years after she filed her application for disability benefits), rise above minimal daily activities.

Finally, the ALJ did account for Surrett's limitations in the RFC. In the 24-page RFC analysis, the ALJ concluded Surrett had the ability to perform only "light work" with the ability to "climb ramps or stairs occasionally," the ability to "stoop, kneed, crouch and crawl occasionally," and "simple tasks with customary breaks and few changes in a routine setting; and can have occasional interaction with the general public, coworkers, and supervisors." AR 21-22. This accommodated her testimony that she is able to care for her pets (which presumably requires crouching/stooping due to their small size), her testimony that she struggled to walk multiple flights of stairs every hour during her last job, her difficulty concentrating, and medical records showing she practiced yoga. AR 23, 25, 35, 66, 82. Therefore, the Court finds that the ALJ did not discount her subjective complaints based on a lack of objective medical evidence, but instead supported his decision with substantial evidence.[4]

---

[4] Surrett also takes issue with the ALJ's finding that Surrett's physical and mental impartments had improved with treatment. *See* Doc. No. 6 at 24. However, that part of the ALJ's decision reviewed her disabilities as a whole, not merely her fibromyalgia, and so is not evidence that the ALJ improperly required favorable objective medical evidence regarding Surrett's fibromyalgia. *See* Doc. No. 5 at 43; *see also Shelby D.*, 2023 WL 6444895, at \*12 ("[T]he ALJ

3. **The Opinion of Surrett's Treatment Provider, Loretta Leake**

Surrett lastly asserts that the ALJ erred in finding the opinion of her treatment provider, Loretta Leake, unpersuasive because it appeared overly reliant on Surrett's self-reports and inconsistent with actual treatment records, underlying exam findings, and her daily activities. The Commissioner contends that the ALJ was entitled to find Leake's opinion unpersuasive due to deficiencies in the opinion and contradictions between the opinion, physical examinations, and Surrett's daily activities.

After an extensive review of Surrett's medical history, the ALJ concurred with Leake's finding that Surrett "has a combination of postural, manipulative and environmental limitations." AR 36. However, the ALJ found her opinion unpersuasive to the extent it suggested limitations beyond those in the RFC because it "appears to be overly reliant on the claimant's self reports rather than consistent with or supported by the actual treatment records and underlying exam findings, nor does it appear consistent with the claimant's ADLs acknowledged in the record since the alleged onset date." *Id.*

In her opinion, Leake said that Surrett's impairments affected her ability to stand and walk, but left blank the question asking how many hours Surrett could stand or walk in an eight-hour workday or without interruption. AR 726. Leake did note that Surrett could sit for 15 to 20 minutes at a time, but did not answer how many hours total she could sit in a typical eight-hour workday. AR 727. Similarly, Leake opined that Surrett's impairments would cause her to miss work more

---

here did not 'effectively require[ ]' objective evidence or offer objective medical evidence as the 'chief' or 'definitive' reason to discount the intensity of Claimant's complaints. Instead, as discussed above at length, the ALJ evaluated Claimant's diagnoses and treatment in conjunction with her other impairments, and found the record was not consistent with Claimant's allegations; in addition, the ALJ supported his findings with citations to extensive record evidence.") (internal citation omitted).

than four times a month, but left blank the area asking for an explanation and otherwise provided no reasoning. AR 728. The ALJ further noted that Leake's report was inconsistent with another medical record from two months prior that showed Surrett helped her mother after back surgery. AR 37. Leake's recommendation that Surrett use a cane was also inconsistent with other medical records from the prior year showing she had normal muscle strength and tone in addition to a normal gait and station. *Id.*

The Court also notes that the ALJ did accept many of Leake's findings, such as her opinion that Surrett would "require frequent position changes but not need to elevate her legs throughout the day; never balance or crawl; occasionally climb, stoop, crouch, and kneel; limited to unspecified degree in her handling, feeling, and pushing or pulling but not reaching, seeing, hearing, or speaking; and should avoid heights, moving machinery, temperature extremes, humidity and vibration but not chemicals, dust, noise, or fumes." *Id.* These restrictions largely align with the RFC. Therefore, the ALJ did not err in finding portions of Leake's opinion unpersuasive.

In sum, the Court concludes that the ALJ applied the correct legal standards and his conclusion that Plaintiff was not disabled is supported by substantial evidence. Therefore, the ALJ's decision will be affirmed.

## IV. ORDER

It is therefore ordered that the Commissioner's decision is **AFFIRMED** and the Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED.**

**SO ORDERED.**

Signed: January 17, 2024

Kenneth D. Bell
United States District Judge